## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOHN DISA,

     **Plaintiff,**

vs.                                                    **Case No. 8:14-cv-01915-T-27AEP**

ASHLEY FURNITURE INDUSTRIES,
INC.,

     **Defendant.**

_____/

### ORDER

**BEFORE THE COURT** is Defendant's Motion for Summary Judgment (Dkt. 22), which Plaintiff opposes (Dkt. 36). Upon consideration, the motion is **DENIED**, because there are genuine disputes of material fact about whether Plaintiff was entitled to a pro-rated bonus for 2013.

## I.   INTRODUCTION

Plaintiff John Disa became the President of Defendant's subsidiary, Ashley Furniture HomeStores, Ltd. ("AHS") in January 2009. (Disa Dep, Dkt. 37-1 at 42:1-3). Before joining AHS, Disa had worked as a high-level executive of other retail companies, including Casual Corner, Foot Locker, and Wickes Furniture. (*Id.* at 11-13, 16-19, 27-29). At AHS, Disa oversaw four different categories of retail outlets: Ashley Furniture HomeStores ("AFHS"), Kingswere Furniture ("KWF"), Rockledge Furniture ("RLF"), and Stoneledge Furniture ("SLF"). (*Id.* at 42:12-43:7). Disa was hired (and eventually fired) by Todd Wanek, the CEO of Defendant Ashley Furniture Industries, Inc. ("Ashley"), which was the privately-held, Wanek family-controlled parent of AHS. (Disa Aff., Dkt. 36-3 ¶ 2).

1

After Disa was hired, he drafted an Employment Agreement,[1] which was signed by both Wanek and Disa on December 4, 2009.[2] (Dkt. 36-4 at pp. 2-4). The document was titled "Employment Agreement Between Ashley Furniture Industries (AFI) and John Disa" and its effective date was January 1, 2009. (*Id.* at p. 3). The "Compensation" section consisted of two bullets. (*Id.*) The first was the "Base Salary: $700,000 annually." Second was the "Incentive Bonus: $800,000 annually," with two bullets underneath, the first of which read, "50% of the incentive bonus will be based upon the same store sales growth *or total sales growth of licensed and corporate stores, which will be determined and agreed upon by the parties during each year[']s planning process.*" (*Id.*) (italics original). The second bullet stated, "50% of the incentive bonus will be based upon a profitability goal . . . for each of the corporate homestores. The profitability number will be agreed upon each year['s] planning process *accompanied by the profitability goal assumptions (to provide a basis for unanticipated activity which may increase or decrease the original goal).*" (*Id.*) (italics original). The Employment Agreement also included the following provision: "Severance: In the event of involuntary separation, AFI will provide one year severance pay at the current annual base salary or $700,000, whichever is higher, payable each pay period over the next 26 pay periods . . . ." (*Id.* at p. 4) (italics deleted). Finally, the Employment Agreement stated that "a long-term incentive plan" would be established "in lieu of stock options that will provide financial incentive to grow and share in the growth of the business," which was to "be constructed similar to an option plan with specific metrics established for valuation." (*Id.*) (italics deleted).

In July 2010, Disa and Wanek discussed the creation of a long-term incentive plan, as

---

[1] The parties do not dispute that Disa drafted the Employment Agreement, although they dispute the context of the discussions about drafting and the significance of the drafter.

[2] The Employment Agreement states that it is "Offered by" Wanek and "Accepted by" Disa. (*Id.* at p. 3)

contemplated by the Employment Agreement. Disa's draft of an amended compensation agreement included the following clause: "Change of control. If, on or after a change of control, the Company's Board of Directors terminates Mr. Disa's employment without cause . . . Mr. Disa will be entitled to receive (i) a prorated bonus for the fiscal year in which his employment terminates, and (ii) severance payments totaling 100 percent of an amount equal to his then-current base salary (minimum of \$800,000) plus the maximum annual bonus earned from the prior two fiscal years of a change in control (minimum of \$800,000) . . . ." (Dkt. 37-1 at p. 77). This draft was not adopted, however. (Disa Dep. 99:10-16). The parties later agreed, in a document titled "John Disa Compensation Plan - AMENDED August, 2010" (the "Amendment"), to amend only the bonus provision of the Employment Agreement, changing it for periods after 2011 ("Go Forward") to the sum of 10% of the pretax earnings of the KWF, RWF, and SLF stores (titled as "Enterprise Incentive"), and \$15,000 per percentage point of sales growth in AHS stores ("AHS Incentive"). (Dkt. 36-4 at p. 4). The Amendment also stated, "Change of control clause removed." (*Id.*)

Pursuant to the Employment Agreement as modified by the Amendment, Disa was paid bonuses for 2011 and 2012, based on 10% of the pretax earnings of KWF, RWF, and SLF stores, and \$15,000 per percent increase in AHS same store sales. (Disa Dep. 97:4-99:1). The 2011 bonus was paid in 2012 and the 2012 bonus was paid partially in December 2012 and the remainder in early 2013 after complete financial figures were available for 2012. (*Id.*)

On October 30, 2013, Wanek told Disa he wanted to change course, and on November 4, 2013, Wanek fired Disa, effective immediately. (Wanek Dep., Dkt. 37-2 at 50:14-16, 74:10-25, 117:3-22). Wanek said he fired Disa based on poor performance, but Disa stated he was never told that was the reason. (*Id.* at 50, 67, 71-72; Disa Dep. at 112-114). Defendant paid Disa a severance of \$800,000 but did not pay a bonus for 2013. (Wanek Dep. 47:14-16, 105:11-16, 119:16-24).

3

Disa brought this lawsuit against Ashley, claiming it was obliged to pay him the bonus due in 2013, which he calculated to be approximately $1,288,167. (Dkt. 1 ¶¶ 13-14). Disa contends he is due the bonus under theories of breach of contract (Count I), breach of oral contract (Count II), promissory estoppel (Count IV), unjust enrichment (Count V), and common law unpaid wages (Count VI).[3] Ashley has moved for summary judgment on all counts.

## II.   STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-08 (11th Cir. 1991)). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d

---

[3] In his complaint, Disa also sued on the basis of equitable accounting, but has waived that claim and summary judgment will be granted on Count III.

812, 815 (11th Cir. 2010). The nonmoving party must "go beyond the pleadings," and designate specific facts showing that there is a genuine dispute. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). A mere scintilla of evidence in the form of conclusory allegations, legal conclusions, or evidence that is merely colorable or not significantly probative of a disputed fact cannot satisfy a party's burden. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991); *Kernel Records*, 694 F.3d at 1301.

The evidence presented must be viewed in the light most favorable to the nonmoving party. *Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 658 (11th Cir. 2012). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). "Although all justifiable inferences are to be drawn in favor of the nonmoving party," *Baldwin Cnty. v. Purcell*, 971 F.2d 1558, 1563-64 (11th Cir. 1992), "inferences based upon speculation are not reasonable." *Marshall v. City of Cape Coral*, 797 F.2d 1555, 1559 (11th Cir. 1986). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine dispute over a material fact, the court should not grant summary judgment. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1998). However, if the nonmovant's response consists of nothing more than a repetition of conclusory allegations, summary judgment is not only proper, but required. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981), *cert. denied*, 456 U.S. 1010 (1982).

## III.   DISCUSSION

Ashley moves for summary judgment on the basis that it was not obligated, based on the plain language of the contract and extrinsic evidence, to pay Disa a pro rata bonus, because the bonus was due only if Disa worked a full year. Because the contract is ambiguous and a jury could

reasonably find that Disa was due a pro rata bonus for the time he worked in 2013, summary judgment is due to be denied.

### A.  General Principles of Contract Interpretation

The interpretation of a written contract, including the question of whether a contract is ambiguous, is a matter of law. *DEC Elec., Inc. v. Raphael Constr. Corp.*, 558 So. 2d 427, 428 (Fla. 1990). Oral contracts are also subject to the "basic requirements of contract law." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) (citing *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So.2d 297, 302 (Fla. 1st DCA 1999)). As with written contracts, the essential terms of oral contracts must be sufficiently specified, but nonessential terms may remain open. *Id.* If the contract is unambiguous, it must be interpreted in accordance with its plain meaning so as to give effect to the contract as a whole. *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013). If possible, conflicting provisions of a contract are to be read in such a way to give a reasonable interpretation and effect to all provisions. *Cont'l Ins. Co. v. Collinsworth*, 898 So. 2d 1085, 1087 (Fla. 5th DCA 2005).

If a contract is "susceptible to more than one reasonable interpretation" and cannot be reasonably reconciled, the contract is deemed ambiguous and rules of contract interpretation must be applied. *State Farm Mut. Auto Ins. Co. v. Menendez*, 70 So. 3d 566, 570 (Fla. 2011); *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 735 (Fla. 2002); *Discover Prop. & Cas. Ins. Co. v. Beach Cars of W. Palm, Inc.*, 929 So. 2d 729, 732 (Fla. 4th DCA 2006). But courts cannot rewrite contracts or add meaning to create ambiguity. *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir. 1993) (citing *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986)). "There must be 'a genuine inconsistency, uncertainty, or ambiguity in meaning [that] remains after resort to the ordinary rules of construction'" for a provision to be ambiguous.

*Dahl-Eimers*, 986 F.2d at 1382 (quoting *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979)). Where the terms of a contract are ambiguous, the actual intention of the parties–the governing principle of contract construction–becomes a question of fact. *In re Gardinier, Inc.*, 831 F.2d 974, 976 (11th Cir. 1987); *Menendez*, 70 So. 3d at 570.

### B.   Interpretation of Employment Agreement and Amendment

The Employment Agreement and Amendment make the payment of a bonus nondiscretionary, according to both Disa and Ashley. (Wanek Dep. 109:6-23, Disa Dep. 105:5-11). However, the parties dispute whether a pro rata bonus is due under the contract. Ashley argues that the contract unambiguously states that no pro-rated bonus is due, and alternatively, that if the contract is ambiguous, application of the rules of construction leads to the conclusion that no bonus is due. At this stage, Ashley's arguments are unavailing.

First, the contract is ambiguous as to the payment of a pro rata bonus. Ashley argues that because the contract contained a severance provision that provided only for the payment of salary, not the bonus, a pro rata bonus is unambiguously excluded. However, the existence of a severance provision does not rule out the possibility that other payments that vested prior to termination were due pursuant to the contract. *See Patwary v. Evana Petroleum Corp.*, 18 So.3d 1237, 1238 (Fla. 2d DCA 2009) (reversing grant of summary judgment because "employer's right to terminate an at-will contract does not entitle the employer to renounce compensation or other benefits that vest while the contract is in force."). Ashley also contends that the bonus in the Employment Agreement is described as due "annually," and that means that the bonus was due only if Disa worked for a full year. However, it is unclear whether the word "annually" in the Employment Agreement continued to modify the bonus after the Amendment, which does not include the word. (*See* Dkt. 36-4 at p. 4). Even if it were clear that the word "annually" applied to the bonus provision, it would remain

ambiguous whether "annually" meant simply that the bonus would be calculated based on annual financial results, or that the bonus was payable only if Disa remained for a full year. Because the contract is susceptible to more than one reasonable interpretation, it is ambiguous, and the parties' intention in forming the contract is a question of fact.[4] *Menendez*, 70 So. 3d at 570. *See Forest Hills Utilities, Inc. v. Pasco Cnty.*, 536 So. 2d 1117, 1119 (Fla. 2d DCA 1988) ("A latent ambiguity is said to exist where a contract fails to specify the rights or duties of the parties in certain situations and extrinsic evidence is necessary for interpretation or a choice between two possible meanings.").

Second, Ashley argues that if the contract is ambiguous, the extrinsic evidence and rules of construction provide that the bonus was not be paid on a pro rata basis. While some of the evidence supports Ashley's position, none of it compels summary judgment, and the jury can decide how to weigh the extrinsic evidence. Ashley relies heavily on the fact that a draft of the Amendment included a "Change of Control" provision that would have guaranteed Disa's bonus in the event the Wanek family sold Ashley, and the "Change of Control" provision was rejected by Wanek. (Dkt. 36-4 at p. 4; Disa Dep. 99:10-16). However, no change of control actually occurred; Disa was fired by Todd Wanek. Therefore, the exclusion of the Change of Control provision is not determinative. Ashley also relies on the fact it has not paid pro rata bonuses to other employees, and Disa's bonuses were calculated at year's end. Wanek admitted, however, that Disa's contract was *sui generis*, and Ashley's other employees generally received discretionary bonuses, which were a smaller proportion of their total pay. (Wanek Dep. 44-45; see Disa Aff. ¶¶ 8, 15). Further, although Disa's final bonus was based on a year's worth of data, he was paid a partial bonus in December 2012 based on incomplete data for 2012, and received the remainder of his 2012 bonus later. (Disa Dep. 89:15-

---

[4] Indeed, the parties' disagreement about the meaning of the applicability and importance of the word "annually" is, itself, evidence of ambiguity of the contract. *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir. 1993).

90:6). Similarly, Ashley's arguments about Disa's severance payments in previous jobs rely on disputed issues of fact. (*See id.* 13:15-14:18, 21:2-22:11, 29:15-19). Ashley speculates that Disa wanted to remain employed until January 2014 to become eligible for the bonus, but the facts regarding Disa's departure date are unclear. (Disa Dep. 115:7-19, 143:23-144:18; Wanek Dep. 75:14-76:19). Ashley also contends that the contract should be construed against Disa as the drafter, but the facts surrounding the contract's drafting are murky. While Disa was the party actually putting pen to paper, there is evidence suggesting the drafting was done at Wanek's direction. (Disa Dep. 36:5-41:23, 64:20-65:3, 69:6-17, 83:15-84:23, 85:22-25, 87:1-8; Disa Aff. ¶¶ 6, 11). Finally, as stated, the import of the word "annually" is ambiguous, notwithstanding Ashley's arguments. Accordingly, summary judgment is due to be denied on Count I. *See De Felice v. Moss Mfg., Inc.,* 461 So. 2d 209, 210 (Fla. 3d DCA 1984) (reversing summary judgment against employee on claim for ""guaranteed bonus" of $2,000, which, according to the contract, was "to be paid during December 1981," since the contract does not clearly and unequivocally provide that [the employee] would be entitled to the bonus only if he was employed through December 1981, and [the employer] has not otherwise conclusively shown that such was the intent of the parties.").

### C.    Other Claims

Ashley's arguments about Disa's other theories of recovery fare no better. As to the breach of oral contract, Disa's contentions that the parties reached a verbal agreement to pay him a non-discretionary bonus create a genuine dispute as to whether the contract was modified. Such a question is generally an issue of fact reserved for the jury. *See St. Joe Corp,* 875 So. 2d at 382 (citing *Kiwanis Club of Little Havana, Inc. v. de Kalafe,* 723 So.2d 838, 841 (Fla. 3d DCA 1998)) (further citations omitted). Disa's promissory estoppel, unjust enrichment, and unpaid wages claims may proceed to trial as alternative theories. *Real Estate Value Co. v. Carnival Corp.,* 92 So. 3d 255,

263 n.2 (Fla. 3d DCA 2012) (citing *Hazen v. Cobb*, 117 So. 853, 857-58 (Fla. 1928)).

## IV.    CONCLUSION

Defendant's Motion for Summary Judgment (Dkt. 22) is **DENIED** as to Counts I, II, IV, V,

and VI. The motion is **GRANTED** as to Count III.

**DONE AND ORDERED** this ___*18*<sup>th</sup>___ day of September, 2015.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to: Counsel of Record

10